## In re HINES.

### (District Court, S. D. West Virginia. August 18, 1902.)

1. BANKRUPTCY—COSTS—EXEMPTION.

Bankr. Act 1898, § 36, providing that the act shall not affect an allowance to bankrupts of the exemptions allowed by the state statute, does not authorize the retention of such exemptions against the court costs in voluntary bankruptcy; section 51, cl. 2, requiring the collection of fees of the clerk, referee, and trustee before filing of the petition, except on a showing in voluntary bankruptcy that petitioner is without, and cannot obtain, the money with which to pay such fees.

On July 1, 1902, Floyd O. Hines filed a petition in bankruptcy in the office of the clerk of the district court for the Southern district of West Virginia, accompanied by an affidavit of his inability to pay the costs. "Schedule B (2)," filed with petition, showed that said Hines had personal property of the value of $77, including $5 in cash, and $20 in cash in the hands of the Chesapeake & Ohio Railway Company, due him as wages. He exempted this personal property, including the $5 cash in his hands and the $20 in the hands of the Chesapeake & Ohio Railway Company. On July 22, 1902, the referee, R. M. Baker, made a ruling, holding "that a bankrupt cannot exempt as against the costs of the clerk and referee and other court costs, and any money he has should be applied first to the payment of the costs of the bankruptcy proceedings before taking out the amount of exemptions claimed, especially where the exemption claimed is in money." And the question thus decided by the referee was certified to the judge for his opinion.

KELLER, District Judge (after stating the facts as above). Section 6 of chapter 3 of the bankruptcy act provides that "this act shall not affect an allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or the greater portion thereof, immediately preceding the filing of the petition." It seems clear that the provision of this section was intended to protect property and effects in the hands of the bankrupt, to the extent provided by the exemption laws of the state wherein was his domicile, against the claims of creditors which might be filed in the bankruptcy proceedings. It does not appear to be reasonable to hold that such exemptions may be retained as against the actual and necessary court costs of the bankruptcy proceedings, initiated by the voluntary filing of a petition by such bankrupt. Not only does this seem unreasonable, but the words of the act itself seem clearly, to my mind, to negative any such construction of the section above quoted.

Section 51, in speaking of the duties of clerks, provides as follows:

"* * * (2) Collect the fees of the clerk, referee and trustee, in each case instituted before filing the petition, except the petition of a proposed voluntary bankrupt which is accompanied by an affidavit stating that the petitioner is without, and cannot obtain, the money with which to pay such fees."

A fair construction of the above language indicates that it was the intention of the act to allow voluntary bankrupts to file their petition without the payment in advance of the fees therefor, only in case they did not have, and could not obtain, the money with which to pay such fees. In other words, if the bankrupt was absolutely without money or effects of any kind, but was able to borrow from his friends money with which to pay the court costs, he could not properly make the affidavit required in this case, and it would be his duty to pay the fees. This is a matter which has been decided by several different district courts, and the following authorities are cited; In Re Collier (D. C.) 93 Fed. 191, it was held that an affidavit of inability by the petitioner to pay the fees is not conclusive of his poverty; and, if circumstances appear casting doubt upon the truth of the affidavit, the question may be sent to the referee, to investigate and report the facts as to petitioner's ability to deposit the fees. Also "a person employed by a railroad company at a salary of $30 per month, such salary being exempt from execution by the laws of the state, is not entitled to take the benefit of the bankruptcy law without depositing the fees required by the act, on an affidavit that he cannot obtain the money with which to pay such fees; and his petition will be dismissed unless the fees are deposited within a reasonable time. The exemptions allowed by the act do not excuse the payment from them of the fees of the bankruptcy court." In Re Bean (D. C.) 100 Fed. 262, it was held that "the liability of a voluntary bankrupt to pay the fees required by Bankr. Act 1898, § 51, cl. 2, does not depend upon his having property which is not exempt, but he is excused from such payment only in case of absolute inability. He may be ordered to pay such fees out of pension money remain-

ing in his hands at the time of filing petition." "The exemptions allowed by the law do not excuse the payment from them of the fees of the bankruptcy court, so as to permit the suit to proceed on an affidavit of inability to advance the costs, as required." Branden. Bankr. (2d Ed.) p. 145, § 26. These authorities are abundant to show that the holding of the referee in this case is correct. The petitioner is not a pauper in the sense of the bankruptcy act. Exemptions allowed by the statute were not intended to cover exonerations from the payment of the fees provided for the court officers by that act. Having held that the statute does not confer upon a voluntary petitioner in bankruptcy the unqualified right to proceed upon his own affidavit as to his poverty, it follows that if, from the schedule filed by such petitioner, facts appear which are at variance with such affidavit, an order should be made requiring the bankrupt to deposit such fees before proceeding further with the case.

The ruling of the referee herein is approved in full.