**In the Matter of Athen Carlton GARLAND et al., Bankrupts, Appellants.**

**No. 7476.**

United States Court of Appeals, First Circuit.

July 8, 1970.

Paula W. Gold, Boston, Mass., with whom Richard Seid, Richard A. Glickstein, Boston, Mass., and Henry W. Schaeffer were on brief, for appellants.

Daniel Joseph, Attorney, Department of Justice, with whom William D. Ruckelshaus, Asst. Atty. Gen., Herbert F. Travers, Jr., U. S. Atty., and Alan S. Rosenthal, Attorney, Department of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Juges.

ALDRICH, Chief Judge.

Petitioners, husband and wife, appeal from an order of the district court affirming the action of a referee in bankruptcy refusing them discharges because

of failure to pay the $50 filing fees. More exactly, the district court declined to review the referee's denial of motions to vacate an order requiring the payment of the fees and, correspondingly, denying petitioners leave to proceed in forma pauperis. Because constitutional questions were raised, the government was notified and allowed to intervene, and in effect is the appellee.

Following petitioners' appeal, the government's first undertaking was to move to dismiss the appeal because less than $500 was involved and no certificate had been obtained pursuant to 11 U.S.C. § 47. This motion was denied. Possibly the government thought itself duty-bound to make the motion, but it was not invited to intervene to cause the disappearance of the issue.

Petitioners, in an extensive brief, make two, possibly three points. They contend that the Bankruptcy Act, 11 U.S.C. § 1 et seq., does not in terms require the payment of fees by indigents, or at least does not require payment with such specificity that, under the rule of construction we adopted in Pasquarella v. Santos, 1 Cir. 1969, 416 F.2d 436, the relief afforded by 28 U.S.C. § 1915(a) is not to be read into it. Alternatively, they contend that if an indigent cannot obtain a discharge without payment of fees, he has been denied due process. Putting this in terms most favorable to petitioners, we will consider this as a claim of lack of equal protection.

■ We find no merit in either portion of petitioners' first contention. In 1946 the former, or fee, method of compensating referees, by awarding them all fees received, was abolished and there was established the principle of a self-supporting system. The individual referees are paid salaries commensurate with their duties from district to district, 11 U.S.C. § 68(a), rather than by the inequitable contingencies of fees received, and the fees charged are to be regulated so that the system as a whole will produce sufficient revenue to meet all costs. 11 U.S.C. § 68(c) (2).* At the same time, pauper petitions, requiring no fee from certain voluntary bankrupts, authorized by section 51(2) of the 1898 Act, 30 Stat. 558–559, were abolished. Whether Congress thought that there was no need, or no obligation, to open the bankruptcy court to persons unable to pay the fee, or whether it thought that termination of the referee's personal incentive to collect fees from many reluctant bankrupts who were, in fact, able to pay them, would be so detrimental to the operation of the new system that an occasional suitor truly destitute should be disregarded for the good of the whole, cannot be told. S.Rep.No. 959, 79th Cong., 2d Sess. p. 7. The significant matter is the disappearance of the former pauper provision, and the substitution of a requirement that a bankrupt who asserts contemporaneously with the filing of his petition that he cannot pay the fee, may pay in installments, but must pay ultimately as a condition precedent to discharge. 11 U.S.C. §§ 32(b), (c) (8), 68(c) (1), 95(g); General Order in Bankruptcy 35(4) (c), 331 U.S. 873, 877.

In this positive framework there is no room to apply a broad interpretation of 28 U.S.C. § 1915(a) as we did in Pasquarella v. Santos, ante. That section provides in general terms for the waiver of prepayment of court fees in case of indigency. Where the Bankruptcy Act already has a special provision for postponement of fees in case of indigency,

---

* The fees initially set proved to be more than sufficient, and the system developed a sizable surplus. In recent years increasing costs, and most notably, increased remuneration to the referees, set a marked trend in the other direction. This has caused the Judicial Conference of the United States to recommend, in the interest of keeping fees within manageable size, that the self-supporting principle be abolished. Report of the Proceedings of the Judicial Conference for March 13–14, 1969, pp. 23–24, same for March 16–17, 1970, p. 25. However, the law has not yet been amended.

we cannot read into it a different provision of a general statute not made specifically applicable. In *Santos* we merely filled a void. Of more basic importance, section 1915(a) provides for waiver of prepayment only, not for forgiveness. *See* section 1915(e). It cannot be read to eliminate a requirement of ultimate payment phrased as a condition precedent.

■ We turn, accordingly, to petitioners' assertion of lack of due process. Their analysis is over-simplistic, both with respect to the nature of the relief rendered by the bankruptcy court and to the nature of the obligation to pay for it, and, possibly, to the concept of indigency. For reasons that we will deal with in the balance of the opinion, this is not a case like Boddie v. State of Connecticut, D.Conn., 1968, 286 F.Supp. 968, appeal pending, October Term 1970, where a person of little means alleged inability to pay the fee required to seek a divorce, and claimed lack of due process. To begin with the degree of poverty required to be termed indigent in ordinary in forma pauperis situations, petitioners state, "[D]estitution is not required to file other civil actions in the federal courts in forma pauperis," citing Adkins v. E. I. DuPont de Nemours & Co., 1948, 335 U.S. 331, 339–340, 69 S. Ct. 85, 93 L.Ed. 43. If, by this, petitioners mean there should be as generous an interpretation of indigency in a bankruptcy case as in a civil case, they misunderstand the fundamentals. A bankrupt is legally obligated to surrender his assets and to leave himself precisely "destitute," with the exception of assets specifically exempt. 11 U.S.C. § 24. If the bankrupt has any other assets, no matter how small, they must be given up, as a consideration for a discharge.

An immediate question, not necessarily relevant to petitioners, but important to a general examination of the question they raise, is whether exempt assets are to be looked to in connection with the payment of the fee. This had been the practice from the beginning. In fact it was said that the bankrupt could not qualify as a pauper unless he was not only without assets, but without available credit. In re Collier, W.D.Tenn., 1899, 93 F. 191; In re Bean, D.Vt., 1900, 100 F. 262; In re Hines, S.D.W. Va., 1902, 117 F. 790; In re Medearis, W.D.Tex., 1923, 291 F. 709; In re Stuck, W.D.Mo., 1926, 13 F.2d 266. A contrary dictum was confined to the "humiliation" involved in requiring the bankrupt to borrow. Sellers v. Bell, 5 Cir., 1899, 94 F. 801, 817. All but one of the above cases, however, postdated that complaint. At least to the extent of requiring the application of exempt assets, the principle is fully established. 2 Collier, Bankruptcy (14th ed. 1969) ¶51.04.

The reason given for this rigidity, and one reason we would give for distinguishing this case from ordinary litigation, is that the "statutory fees * * * are primarily for services for the benefit of the bankrupt." In re Bean, ante, 100 F. at 263. Although bankruptcy is administered in a "court" it is in most particulars a very unusual court. "The core of bankruptcy is administrative." St. Regis Paper Co. v. Jackson, 5 Cir., 1966, 369 F.2d 136, 141. Referees are primarily administrators who, together with trustees, render financial services. A bankruptcy is not litigation in the normal understanding of the term, but merely a process under which the bankrupt files a petition, turns over his assets, if any, and awaits the receipt of a discharge. Before we determine that he is constitutionally entitled to such service, and to the ultimate discharge, without payment, it is appropriate to consider the alternative, both to him and to the government.

The primary question must be why an individual admitting no assets has need for a discharge. If he has nothing, or if whatever he has is exempt under 11 U. S.C. § 24, it would seem that his creditors would find it pointless to pursue him. If they should pursue, one would wonder what the debtor could have to be

concerned about. We can think of only two classes of seemingly assetless persons who might want a discharge: those who in fact have assets, but hope to conceal them, and those who have none, but, as present petitioners claim for themselves, expect future assets, and wish to be rid of their creditors first. The first category deserves, of course, no consideration. We do not think the claim of the second so compelling that they must be constitutionally entitled to a free discharge.

Perhaps, basically, the question is one of expense. Petitioners estimate that a substantial proportion of so-called no-asset cases would come under their proposed principle. They place this figure at 60,000 cases annually, or one third of all filings, a loss to the system of $3,000,000. Whatever the proper figure, were such rule to be adopted a major problem would be the determination whether in fact the proposed bankrupt does not have, or will not have over a period of six months, sufficient funds to pay the filing fee. It is easy for him to deny, and difficult to prove otherwise. We have no doubt that the adoption of petitioners' rule would mean that a very substantial number of persons who could in fact pay, will avoid doing so.

If there were substantial injury involved, this financial loss might have to be suffered. We do not find such injury. A bankruptcy discharge is not a fundamental right. Congress can, and has, concluded that it is desirable under certain circumstances that an individual be able to get clear of his debts and start afresh. It must have the right, however, to attach reasonable conditions to this privilege. We do not think it unreasonable for Congress to conclude that if future assets are to be cleared of incurred encumbrances, a fee be paid, if not available elsewhere, out of those assets when they are received.

Finally, while, as we have said, this may basically be a question of meeting the expense of operating the system, we do not think it inappropriate for Congress to determine, from a social point of view, that one who is receiving the privilege of avoiding his past, and by hypothesis, legitimate debts, should experience some slight burden in return. Nor is the present system discriminatory. Bankrupts who have assets give up what they have. Bankrupts in the position of the petitioners, should they prevail in this case, will never have given up anything. We do not feel obliged to rule that the present statute is an unconstitutional imposition. Rather, it seems to us that the Congressional requirement of the payment of a $50. fee before receiving a discharge does not arbitrarily discriminate, but bears a rational relation to the service offered and to the bankrupt's need for that service.

Affirmed.