**Application of Elda Marie OTTMAN for Leave to Proceed in Forma Pauperis.**

**Misc. No. 303.**

United States District Court,
E. D. Wisconsin.

Jan. 7, 1972.

Jordan B. Reich, Chief Staff Attorney, and Thomas R. Cannon, Staff Atty. of Legal Aid Society, Milwaukee, Wis., for Ottman.

DECISION AND ORDER

MYRON L. GORDON, District Judge.

The petitioner in this action seeks leave to proceed in bankruptcy, pursuant to 28 U.S.C. § 1915, "without being required to pay fees or costs before or after bringing such action, and without making a deposit or executing a bond for costs." An affidavit of poverty accompanies her application, together with a memorandum of law.

On December 3, 1971, this court certified to the Attorney General of the United States that the present action is one in which the constitutionality of an act of Congress, 11 U.S.C. §§ 32(c) (8) and 68(c) (1), is drawn into question; the Attorney General's subsequent request to hold the instant case in abeyance was denied and, to date, no request for permission to intervene has been made of this court.

In her affidavit in support of her petition for leave to proceed in forma pauperis, Mrs. Ottman avers that she presently receives public assistance from the Waukesha, Wisconsin, County Department of Social Services and is "unable to pay the costs of . . . [a bankruptcy] . . . action or give security for the same and still be able to

provide . . . [herself] . . . with the necessities of life." Her petition in bankruptcy states that she has debts totalling $2,277.46 and assets, in the form of furniture and clothing, of $122.00. Mrs. Ottman also declares in her affidavit that the county will not pay the fees in bankruptcy of $57.50 and, in her brief, contends that she is unable to guarantee that she can pay the fees in installments, as authorized by Supreme Court General Order 35(4), 331 U.S. 871, 876 (1947).

The petitioner argues that denial of her application for leave to proceed in forma pauperis will result in an abridgment of certain of her rights under the first and fifth amendments to the United States Constitution; she also contends that the Bankruptcy Act does not appear to prohibit petitions in forma pauperis and that "courts should not adopt a construction of a statute which would make the statute ineffective."

Similar arguments were advanced in three recent cases in which it was held that the bankruptcy filing fee places a constitutionally impermissible restriction on an indigent's access to the courts. In re Naron, 334 F.Supp. 1150 (D.C.Or.1971); In re Kras, 331 F. Supp. 1207 (E.D.N.Y.1971); In re Smith, 323 F.Supp. 1082 (D.C.Colo. 1971). In so doing, the cases rejected the rationale of the court in In re Garland, 428 F.2d 1185, 1187 (1st Cir. 1970), cert. denied 402 U.S. 966, 91 S.Ct. 1624, 29 L.Ed.2d 130 (1971), to the effect that,

"Although bankruptcy is administered in a 'court' it is in most particulars a very unusual court. 'The core of bankruptcy is administrative.' St. Regis Paper Co. v. Jackson, 5 Cir., 1966, 369 F.2d 136, 141. Referees are primarily administrators who, together with trustees, render financial services. A bankruptcy is not litigation in the normal understanding of the term, but merely a process under which the

bankrupt files a petition, turns over his assets, if any, and awaits the receipt of a discharge."

*Naron* and *Kras* derive support for their position from Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1971), in which the Supreme Court held unconstitutional Connecticut's $45.00 filing fee for divorce cases; the court in *Kras* also referred to Justice Black's dissent from the denial of certiorari in *Garland* in which he stated, with reference to *Boddie* (402 U.S. at 958, 91 S.Ct. at 1626):

"Even the need to be on the welfare rolls or to file for a discharge in bankruptcy seems to me to be more 'fundamental' than a person's right to seek a divorce. Society provides welfare to ensure the survival of the unfortunate. And bankruptcy is designed to permit a man to make a new start unhampered by overwhelming debts in hopes of achieving a useful life."

*Naron, Kras* and *Smith* each rejects the contention that the allowance of petitions ·in forma pauperis in bankruptcy seriously undermines the proposition that the bankruptcy system should be self-supporting. Noting that the system has not been self-supporting since 1966, the court in *Smith* said at page 1090 of 323 F.Supp.:

". . . some believe that it is no longer possible to maintain such a system without placing an 'inordinate financial burden upon bankrupts and the assets of bankrupts.' 1969 Annual Report of the Director of the Administrative Office of the United States Courts 75–76, 177 (1970)."

In addition, *Kras* and *Smith* specifically hold that 28 U.S.C. § 1915 is inapplicable in bankruptcy actions; each case looks instead to the petitioner's constitutional arguments as a basis for its decision. With regard to the petitioner's contention that her fifth amendment

rights were violated, the *Smith* court stated (page 1088):

> "By characterizing the problem presented in this case as one of equal protection, we do not mean to suggest that fifth amendment due process takes in all of fourteenth amendment equal protection. It is enough to note that fifth amendment due process does include an equal protection principle, Shapiro v. Thompson, 394 U.S. 618, 641–642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and that the two provisions are co-extensive insofar as they prohibit discrimination based upon race, Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954), and other discriminations which are invidious or deprive persons of constitutional rights. Shapiro v. Thompson, supra."

Insofar as they are applicable to the instant facts, I am of the opinion that *Kras* and *Smith* are determinative of the issues in the case at bar; both cases are extensive treatments of the principles which pertain to petitions in bankruptcy by persons completely without the means otherwise to proceed. However, while Mrs. Ottman is entitled to proceed in bankruptcy in forma pauperis on the basis of her affidavit of indigency, I also adopt the following position from *Smith* (page 1093):

> "We think it would be constitutionally permissible, and also appropriate, for the referee, at the final disposition of this case, to fashion an order resembling a judgment for costs, which order would provide that petitioner's obligation to pay the filing fee is not permanently discharged but would arise again if and when she is no longer indigent and can pay the fee without undue hardship."

Therefore, it is ordered that the petitioner's application to proceed in bankruptcy without the prepayment of any of the filing fees be and hereby is granted; it is also ordered that the clerk of this court is directed to accept for filing Mrs. Ottman's petition in bankruptcy without the prepayment of any of the filing fees.