**Delia DeLEON, Raul Torres, Jose Flores, Blanca Trevino, Arnulfo Trevino, Alicia Lopez, Eduardo Lopez, Ismael Martinez, Gloria Martinez, Valentin Rodriguez, Elsa Lopez, Rosalinda Hernandez, Clemente DeLuna, Jr., Plaintiffs,**

v.

**Modesto RAMIREZ, G & G Produce Dealers, Inc., Stanley Gurda, Sr., Defendants.**

No. 76 Civ. 3770.

United States District Court, S. D. New York.

Feb. 22, 1979.

Mid-Hudson Legal Services, Inc., Farm-workers Project, Poughkeepsie, N. Y., for plaintiffs by Howard Schell Reilly, Poughkeepsie, N. Y., of counsel.

Gurda, Gurda & Tatz, Middletown, N. Y., for defendants G & G Produce Dealers, Inc. and Stanley J. Gurda by Gerald S. Tatz, Middletown, N. Y., of counsel.

## OPINION

SWEET, District Judge.

In this action plaintiffs allege that in 1976 defendants G & G Produce Dealers, Inc. ("G & G Produce") and Stanley Gurda ("Gurda") engaged the services of Modesto Ramirez ("Ramirez") as a farm labor contractor without first determining that he possessed a valid certificate of registration from the United States Secretary of Labor. If true, the alleged acts constitute a violation of § 4(c) of the Farm Labor Contractor Registration Act, as amended in 1974 ("the Act"), 7 U.S.C. Ch. 52 § 2043(c). Plaintiffs bring this action as aggrieved persons seeking liquidated damages as provided in 7 U.S.C. § 2050a(a) and (b), upon which the court's jurisdiction rests.

The present motion is made by plaintiffs pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, for partial summary judgment on the second cause of action stated in their first amended complaint.[1] Plaintiffs have offered deposition transcripts, answers to interrogatories, affidavits, and memoranda in support of their motion. They have filed a request for admission pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, and have set forth a statement of material facts as required by Rule 9(g) of the Rules of the Southern District of New York. Defendants, though benefitted with ample time and adequate notice, have failed to reply to plaintiffs' Fed.R.Civ.P. 36(a) request or to the plaintiffs' statement pursuant to S.D.N.Y.R. 9(g). Defendants have neither asked

---

1. The court entered a default judgment against Modesto Ramirez in this case on June 15, 1978.

for an extension of time, nor objected to the form of plaintiffs' statement or request.

▮ In general, properly stated requests under Fed.R.Civ.P. 36(a) are to be deemed admitted in the absence of a formal response by the opposing party. *See Williams v. Krieger,* 61 F.R.D. 142 (S.D.N.Y. 1973) (concerning the entry of summary judgment on the basis of an unanswered Fed.R.Civ.P. 36(a) request). Similarly, in the absence of a reply to the moving party's Rule 9(g) statement, the facts set forth are to be taken as admitted. S.D.N.Y.R. 9(g). Notwithstanding, Gurda's affidavit will, in fairness, be taken into consideration in the court's determination of this motion. *See* Fed.R.Civ.P. 56(e). Plaintiffs' Rule 36(a) request and Rule 9(g) statement will be taken as admitted only insofar as they are left uncontroverted by the Gurda affidavit.[2]

▮ The standard to be used in determining whether to grant a motion for summary judgment has been clarified by the Court of Appeals in *S. E. C. v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978). In its review, this court cannot try issues of fact; it can only determine whether there are issues to be tried. *Id.* at 33; *see also American Mfrs. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967). Any doubts the court may have must be resolved in favor of the party opposing the motion. *S. E. C. v. Research Automation Corp., supra* at 33.

Of course, the materiality of factual issues in this case is to be determined in light of the provisions of the Act, 7 U.S.C. §§ 2041–2053. Section 2043(c) provides as follows:

> No person shall engage the services of any farm labor contractor to supply farm laborers unless he first determines that the farm labor contractor possesses a certificate from the Secretary that is in full force and effect at the time he contracts with the farm labor contractor. *Id.*

This language gives rise to threshold questions: Although G & G Produce and Gurda are "persons" as defined in 7 U.S.C. § 2042(a), and plaintiffs are "migrant workers" within the meaning of 7 U.S.C. § 2042(g), the same simple conclusion cannot be reached regarding the status of Ramirez as a "farm labor contractor." Section 2042(b) states that:

> The term "farm labor contractor" means any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers (excluding members of his immediate family) for agricultural employment. 7 U.S.C. § 2042(b).

Ramirez has stated at deposition that during the first half of 1976 he spoke with certain of the plaintiffs, discussing the terms and conditions of employment at G & G Produce. He has acknowledged that he thereafter transported a number of workers, including at least plaintiffs Raul Torres, Jose Flores, Elsa Lopez, and Rosalinda Hernandez, from Laredo, Texas to the Pine Island, New York premises of G & G Produce. In its answer to plaintiffs' interrogatory no. 54, G & G Produce lists the names of its employees from whom wage deductions were taken for transportation costs from Laredo to Pine Island in 1976. All of the plaintiffs, including those transported by Ramirez, appear on the list. The foregoing facts concerning Ramirez' discussions with plaintiffs in Laredo, his transportation of certain of the plaintiffs in his truck, and their eventual employment by G & G Produce upon arrival at Pine Island, are fully in accord with affidavits submitted by plaintiffs.

▮ Though it is a conclusion well supported by the evidence that Ramirez' discussions with certain of the plaintiffs in Texas constitute recruitment and solicitation within the meaning of 7 U.S.C.

---

2. In eschewing a strict application of procedural sanctions, the court nonetheless remains mindful of the recent emphasis given S.D.N.Y.R. 9(g) by the Court of Appeals for the Second Circuit: "By forcing refinement of the issues, it serves a valuable function even if the motion for summary judgment is denied and the case must proceed to trial." *S. E. C. v. Research Automation Corp.,* 585 F.2d at 34, n.6 (2d Cir. 1978).

§ 2042(b),[3] the court will resolve all doubts in favor of the defendant. In so doing, the court nonetheless must note that Ramirez' activities as a farm labor contractor may be established through uncontroverted evidence showing that he engaged in one or more of the activities listed in § 2042(b). It is not necessary to find that he engaged in all, or several, of the listed services.[4] Thus, Ramirez' statements at deposition are sufficient to establish that he transported several of the plaintiffs and others from Texas to New York. Once there, the plaintiffs were employed by G & G Produce, and deductions were taken from their pay to cover the costs of their transportation. This, in short form, conclusively establishes that Ramirez acted as a farm labor contractor within the meaning of 7 U.S.C. § 2042(b), at a time when he was not registered as required by law.[5]

A tandem reading of Section 2042(b), subsections (2) and (3) might lead to the conclusion that the term "farm labor contractor" is inapplicable to Ramirez if, during his full time or regular employment, he provided such services "on no more than an incidental basis." 7 U.S.C. § 2042(b)(3). Assuming, without deciding, that Ramirez' seasonal employment with defendants may be termed "regular" or "full time," it becomes necessary to determine whether his Section 2042(b) activities may be viewed as incidental to the remainder of his functions.

Though the Act does not clarify its use of the word "incidental," it is apparent that the exception provided in Section 2042(b)(3) is a narrow one; to read it expansively would substantially subvert the remedial purposes of the Act. The issue was treated as follows by the court in *Usery v. Golden Gem Growers, Inc.,* 417 F.Supp. 857 (M.D. Fla.1976):

> To be more than incidental, the activities listed in Section 2042(b) need not be the sole job duties performed by a person. It is sufficient . . . if under the circumstances the farm labor contractor activities performed are one of the major or principal functions of the individual's job. *Id.* at 862.

■ The importance of Ramirez' Section 2042(b) activities in relation to the totality of his functions can in no sense be deemed "incidental" under the above-mentioned standard. The defendants employed Ramirez as a farm labor contractor from 1973–1975, and sought unsuccessfully to register him again as such in 1976. Ramirez was personally involved with furnishing a substantial percentage, at the very least, of the total agricultural work force at G & G Produce in 1976.[6] That such services

---

**3.** The terms used in 7 U.S.C. § 2042(b) are to be given their normal dictionary definition, according to the Secretary of Labor's interpretive regulation 29 C.F.R. § 41.7, issued pursuant to 7 U.S.C. § 2053. The Secretary's interpretation is entitled to substantial weight. *See Usery v. Golden Gem Growers, Inc.,* 417 F.Supp. 857 (M.D.Fla.1976).

**4.** In 29 C.F.R. § 41.7, the Secretary of Labor states that the performance of any one of the activities listed in § 2042(b) is sufficient for purposes of the Act. This view was expressly adopted by the court in *Usery v. Golden Gem Growers, Inc.,* 417 F.Supp. 857, 860–61 (M.D. Fla.1976), in deference to the Secretary's authority, *Id.; see also Usery v. Coastal Growers Ass'n.,* 418 F.Supp. 99 (S.D.Cal.1976), and in light of the plain language of the statute. 7 U.S.C. § 2042(b).

**5.** Though 7 U.S.C. § 2043(b) provides an exception to the registration requirement for employees of those who hold valid certificates of registration in their own right, that is a status avoided by the defendants through the registering of Ramirez from 1973–1975 and through their attempt to register him in 1976.

**6.** Ramirez indicated at deposition that he brought seven or eight workers, in addition to his 11 family members, to Pine Island from Laredo. His arrangement with Delia DeLeon furnished seven more workers. Thus, it is uncontroverted that he furnished at least 14 or 15 workers, excluding family members. Moreover, he obtained pay deduction slips from 32 workers whom he claimed to have transported. Among these were all 13 plaintiffs.

An additional 17 workers, who did not have deductions taken from their pay, gave Laredo as their address in 1976. It is not known what, if anything, Ramirez had to do with their employment. Adding these 17 workers to the 32 who did have deductions taken for transportation, and including Ramirez himself, a minimum of 50 agricultural workers from Laredo were employed by G & G Produce in 1976. Defendant Gurda has asserted in his affidavit

were among his primary functions cannot be seriously contested; defendants have not articulated such an argument.

■ 7 U.S.C. § 2042(b) further requires that, in order to be considered a farm labor contractor under the Act, one's services must be rendered "for a fee." *Id.* "The term 'fee' includes any money or other valuable consideration paid or promised to be paid . . .," 7 U.S.C. § 2042(c). The requirement means only that consideration must be received for such services, *Usery v. Coastal Growers Ass'n*, 418 F.Supp. 99 (C.D. Cal.1976). Thus, whatever questions there may be regarding the proper apportionment of Ramirez' wages per job function,[7] it must be noted that Ramirez also received a commission based on the amount of work done by his crew members.[8] Until at least July 1, 1976, all of the plaintiffs were members of Ramirez' work crew.[9] The commissions thus derived by Ramirez from the work of the plaintiffs, and others, are sufficient to

satisfy the fee requirement under Section 2042(b) and (c). *See Usery v. Golden Gem Growers, Inc., supra* at 861.[10]

■ It is established, therefore, that the activities of Modesto Ramirez in 1976 come within the meaning of 7 U.S.C. § 2042(b) in all respects.[11] The court must now turn to the issue of whether or not the defendants engaged Ramirez within the meaning of 7 U.S.C. § 2043(c). With all that has been left uncontroverted regarding Ramirez, the court's determination is simplified: Despite defendant Gurda's assertions that Ramirez' duties did not extend to farm labor contracting, all of the evidence indicates that Ramirez did perform Section 2042(b) services on defendants' behalf. After registering to provide such services for defendants in 1973–1975, Ramirez again applied for a certificate of registration in 1976. A New York State Department of Labor application was co-signed by Gurda on behalf of G & G Produce;[12] the application states Ra-

---

that in 1976 G & G Produce had need for 50 workers.

7. Though it is uncontested that Ramirez received wages from the defendants in 1976, the affidavit of defendant Gurda asserts that Ramirez' duties did not extend to farm labor contracting in 1976. Absent a method of apportioning Ramirez' wages per job function, the court must assume, for the purposes of this motion, that his wages were paid for foreman's duties.

8. Plaintiffs' Statement of Material Facts, No. 30.

9. Plaintiffs' Statement of Material Facts, No. 31.

10. Additional evidence indicates that Ramirez received checks from Gurda for transporting workers. Money advanced to Ramirez by Gurda went in part to Delia DeLeon in advance of her departure from Laredo, according to her uncontroverted affidavit.

Moreover, plaintiffs' crew work for Ramirez ceased only as a result of action taken by an official from the New York State Department of Labor. Employment Interviewer Herman Buck oversaw the issuance of a clearance order placing plaintiffs under the direct supervision of defendant Gurda as of July 1, 1976. *See* Plaintiffs' Request for Admission, Nos. 131 and 132.

11. This comports wholly with the order entered by Administrative Law Judge Steinberg in Administrative Proceeding No. 77–FLCRA–35–P of the Employment Standards Administration of the United States Department of Labor, dated January 30, 1978. Upon reviewing consent findings entered against Ramirez on January 12, 1978, the judge held that, among other violations of the Act, Ramirez had engaged in farm labor contracting without first obtaining a certificate of registration. The consent findings upon which the order was based were entered following a Department of Labor investigation of Ramirez' activities exclusively for G & G Produce in 1976. A civil money penalty was assessed against Ramirez.

In *Ray Marshall v. Modesto Ramirez*, No. 77 Civ. 447 (S.D.N.Y. Oct. 27, 1977), filed originally on February 1, 1977, a consent judgment permanently enjoined Ramirez from violating the Act, without establishing culpability for any past violations.

12. Gurda was and is director, general manager, and president of G & G Produce (Plaintiffs' Statement of Material Facts, No. 4). G & G Produce is a wholly-owned subsidiary of Gurda Farms, Inc.; Gurda was and is vice-president of Gurda Farms, Inc. (Plaintiffs' Statement of Material Facts, Nos. 3 and 5). A different corporation, G.G. & G. Farms, Inc., was managed by Ralph Gurda in 1976. G.G. & G. Farms, Inc., housed its workers at Gurda Farm Labor Camps G and E in 1976 (Plaintiffs' Request for Admission, Nos. 134–139). G & G Produce

mirez' intention to transport workers to the farm. Both the New York State and the United States Departments of Labor applications were denied.

G & G Produce has indicated that it arranged to deduct the cost of transportation from Laredo to Pine Island from the workers' wages.[13] Deductions were taken from those transported by Ramirez. None of the plaintiffs transported in Ramirez' truck received money in advance. Thus, under either reading of the evidence, the same legal conclusion must be reached: If Ramirez received monies for his transportation of workers, defendants' direct engagement of his services is established. If Ramirez received nothing beyond wages and commissions for these services, G & G Produce ratified his activities through the notably profitable practice of deducting transportation costs from plaintiffs' earnings.

The evidence further indicates that defendants did more than simply ratify Ramirez' actions. It is uncontroverted that Delia DeLeon received money from Ramirez in partial payment for her transporting additional workers to the premises of G & G Produce. The money thus received from Ramirez had been forwarded to him by defendant Gurda.[14] DeLeon further asserts in her affidavit that Gurda advanced monies to her by wire, to pay for the repair of her automobile while en route from Texas, in June, 1976. These and other specific facts are left uncontested by the defendants. Nothing is offered to counter plaintiffs' production of a letter dated March 31, 1976, bearing Gurda's typewritten name, and addressed to Ramirez in Texas.[15] Defendants offer no explanation of the findings of the administrative law judge in Administrative Proceeding No. 77–FLCRA–35–P of the Employment Standards Administration of the United States Department of Labor, dated January 30, 1978. See note 11, at ii. These findings were based on Ramirez' activities while employed by defendants in 1976.[16]

In the crucial areas mentioned above, Gurda's affidavit presents only vague or unsupported denials. "[T]he policy favoring the efficient resolution of disputes, which is the cornerstone of the summary judgment procedure, would be completely undermined if unsubstantiated assertions were sufficient to compel a trial." S. E. C. v. Research Automation Corp., supra at 33. Fed.R.Civ.P. 56(e) provides that when a motion for summary judgment is supported by depositions, affidavits, answers to interrogatories, and admissions, an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth "concrete particulars." S. E. C. v. Research Automation Corp., supra at 33; Dressler v. M. V. Sandpiper, 331 F.2d 130, 133 (2d Cir. 1964). "It is not sufficient merely to assert

stated its intention to house its workers at Gurda Farm Labor Camps B and F, on its application to the New York State Department of Labor for a Migrant Labor Registration Certificate for 1976 (Plaintiffs' Request for Admission, No. 127).

Defendant Gurda's affidavit, and other documents, indicate that G & G Produce, Gurda Farms, Inc., and he, personally, have gone into bankruptcy. The Bankruptcy Court awaits decision here to aid its determination as to the priority of plaintiffs' claims in that proceeding.

**13.** Defendant G & G Produce's Answer to Plaintiffs' Interrogatory No. 54.

**14.** Plaintiffs' Request for Admission, No. 38.

**15.** The letter states Gurda's need for a certain number of people after Easter, and indicates that Gurda will call the following week to give Ramirez more information. It further states

that Gurda will send Ramirez money. The court has not relied on this letter in the absence of Gurda's signature above his typed name, and absent proof that it was, in fact, mailed. Ramirez stated at his deposition that he did not receive a letter from Gurda during that time, though he did recall receiving a telephone call from Gurda in February or March of that year. Gurda merely asserts in his affidavit that he has "no memory of ever signing the letter," and that he doesn't believe it ever was sent.

**16.** Defendants are careful to point out that a consent judgment entered in *Ray Marshall v. G & G Produce Dealers, Inc., and Stanley Gurda*, No. 77 Civ. 446 (S.D.N.Y. Aug. 15, 1977) permanently enjoins them from violating the provisions of § 4(a) of the Act, but does not establish past wrongdoing. *See, for a related case, Ray Marshall v. Modesto Ramirez, supra.*

a conclusion without supplying supporting arguments or facts in opposition to the motion." *S. E. C. v. Research Automation Corp., supra*; *see also Donnelly v. Guion,* 467 F.2d 290, 291 (2d Cir. 1972). Here, defendants offer blanket denials controverted by their earlier answers to interrogatories and by their employee Ramirez' statements at deposition. Not only have defendants failed "to meet their obligations under Rules 56(e) and 9(g), but there is every indication that they could not have done so." *S. E. C. v. Research Automation Corp., supra* at 34.

The civil relief provisions of the Act, which extend federal jurisdiction to claims such as those presented here, are stated in 7 U.S.C. § 2050a. Section 2050a(b) provides as follows: "If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation prescribed hereunder, it may award damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief." 7 U.S.C. § 2050a(b).

The issue of intent may in some cases raise a question as to the propriety of summary judgment. *See S. E. C. v. Research Automation Corp., supra* at 33. As used in Section 2050a(b), however, "intentionally" refers to the common civil standard which holds a person liable for the natural consequences of his or her acts. The courts have adopted this interpretation in stressing the remedial purposes of the Act:

> It is apparent from the differing language in the civil and criminal provisions that Congress did not intend to require proof of specific intent or bad faith in civil actions under 7 U.S.C. § 2050a. Since the Act is a remedial statute, it must be construed in a manner which effectuates rather than frustrates the purpose of the legislative draftsmen . . . Accordingly, defendant, who was already on notice of his obligation to comply with the Act, and who is presumed to intend the natural consequences of his acts, intentionally violated the Act. *Davis v.*

*Fletcher,* No. 76–20 Civ. (M.D.Fla. Mar. 29, 1978); *see also Longoria v. Acosta,* No. 77–1238–Civ. (S.D.Fla. Jan. 29, 1978).

Though the above-mentioned cases involved farm labor contractors rather than farm operators, the court finds no cogent reason to distinguish between the two here. The language of Section 2050a(a) and (b) extends to violations of any of the provisions of the Act, including Section 2043(c). Defendants were fully aware of the requirements of the Act, and had registered Ramirez as a farm labor contractor in 1973, 1974 and 1975. They attempted again to register him in 1976. They are now accountable for the consequences of their acts which violated Section 2043(c).

The 1974 amendments to the Act, including the affirmative duty placed on farm operators pursuant to Section 2043(c), and the civil relief provisions of Section 2050a, were the result of a legislative effort to provide more effective enforcement mechanisms for the Act's substantive requirements. The Senate Committee Report on the amendments indicates that a major weakness of the Act as passed in 1963 resulted from "the absence of any requirement that those who benefit from the work of migrant laborers assume responsibility for engaging only registered farm labor contractors." S.Rep.No. 93–1295, reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 6441, 6443. Defendants here are accountable for the foreseeable consequences of their failure to live up to that responsibility as embodied in 7 U.S.C. § 2043(c). This result is particularly appropriate in the instant case, in light of the fact that Ramirez' Section 2042(b) activities were performed primarily, and perhaps exclusively, for the defendants. In such instances, allowing the farm operator to go untouched in his failure to require that the farm labor contractor be validly registered, could lead to the full scale evisceration of the Act. Indeed, Ramirez was found to have violated a variety of the provisions of the Act during 1976. *See* Administrative Proceeding No. 77–FLCRA–35–P, Employment Standards Administration, *supra.*

The damage provisions of Section 2050a(b) have been held to provide either for actual damages, or for liquidated damages of $500 per violation, as plaintiffs seek here. *See Aranda v. Pena,* 413 F.Supp. 849 (S.D.Fla.1976). This practice has been followed in the entry of default judgments in this district in *Hood v. Henderson,* No. 76 Civ. 5163 (S.D.N.Y. Sept. 16, 1977), and in an action consolidated at one time with the instant case, *Ruffner v. Reyes,* No. 76 Civ. 3770 Action No. 3 (S.D.N.Y. Feb. 16, 1978). The availability of liquidated damages allows effectuation of the Congressional intent to remedy abuses in the area of farm labor contracting of migrant laborers.

Plaintiffs Delia DeLeon, Raul Torres, Jose Flores, and Elsa Lopez have submitted affidavits indicating their status as aggrieved parties.[17] Of the remaining plaintiffs, Ramirez acknowledged at deposition that he transported Rosalinda Hernandez in his truck; Ms. Hernandez also paid for transportation costs through deduction from her earnings. It is further established that all of the remaining plaintiffs were members of Ramirez' crew at a time prior to July 1, 1976, and that Ramirez claimed responsibility for their transportation from Texas by obtaining deduction slips from each of them. Whether transported by Ramirez, by DeLeon as a result of her arrangement with Ramirez, or by another means provided by Ramirez, each of the plaintiffs stands aggrieved as a result of the deductions for transportation taken from their wages by Gurda and G & G Produce.[18] This has been established through reliable evidence evincing the personal knowledge of both plaintiffs and defendants, through facts adduced from plaintiffs' Fed.R.Civ.P. 36(a) request and S.D.N.Y.R. 9(g) statement, and from the pleadings in this case.

 Gurda, as director, president, and general manager of G & G Produce, participated directly in the violation of the Act. In each instance in which G & G Produce dealt with Ramirez as a farm labor contractor, Gurda acted on behalf of the corporation. Particularly where the corporate and individual defendants are as closely linked as they are in the instant case, a corporate officer may be found personally liable for a statutory violation committed by him, even if he acted ostensibly for the corporation. *See A & M Records, Inc. v. M. V. C. Distributing Corp.,* 574 F.2d 312 (6th Cir. 1978); *see also Seligson v. N. Y. Produce Dealers,* 378 F.Supp. 1076, 1093 (S.D. N.Y.1974). Therefore, defendants G & G Produce and Gurda are held jointly and severally liable to the plaintiffs in this action.

In light of the foregoing, the court grants plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56(a), and enters liquidated damages in the amount of $500 for each plaintiff—thus resulting in total damages of $6,500—jointly and severally against defendants G & G Produce and Stanley Gurda. Submit judgment on notice.

IT IS SO ORDERED:

---

17. The submission of the affidavits of the remaining plaintiffs has been deferred until the eve of trial, in light of plaintiffs' indigency, and their distance from New York.

18. Plaintiffs' counsel Mr. Reilly has represented to the court that six of the remaining plaintiffs were transported to New York in Delia DeLeon's automobile. The court has no reason to disbelieve this representation, but finds that the absence of personal knowledge on the part of Mr. Reilly precludes the court's reliance on his affidavit.