**In re GURDA FARMS, INC., Bankrupt.**

**Delia DeLEON et al., Plaintiffs,**

**v.**

**GURDA FARMS, INC., Defendant.**

**In re Stanley J. GURDA, Bankrupt.**

**Delia DeLEON et al., Plaintiffs,**

**v.**

**Stanley J. GURDA, Defendant.**

Bankruptcy Nos. 77 B 1389, 77 B 2171.

United States District Court,
S. D. New York.

Aug. 25, 1980.

As Amended Sept. 3, 1980.

Mid-Hudson Legal Services, Inc., Farmworkers Project, Newburgh, N.Y., for plaintiffs-appellants; Howard Schell Reilly, Thomas S. Cook, Newburgh, N.Y., of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for intervenor, U. S.; Jane E. Booth, Asst. U. S. Atty., New York City, of counsel.

CONNER, District Judge:

This appeal raises the issue whether plaintiffs-appellants ("plaintiffs"), creditors of the defendants-bankrupts ("defendants" or "defendants-bankrupts"), may be permitted to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)[1] in prosecuting an appeal from an order entered by the Bank-

---

**1.** Section 1915(a) provides:

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give

security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

ruptcy Court on August 1, 1979. The United States sought leave to intervene and to oppose plaintiffs' application pursuant to 28 U.S.C. § 2403, which grants the United States the right to intervene in any action where the constitutionality of a federal statute has been raised; the Court has previously granted the Government's motion to intervene.

The Facts

Plaintiffs are thirteen migrant seasonal farmworkers formerly employed by defendants-bankrupts. Plaintiffs allege that they have no significant resources or income beyond that required to support their immediate needs and that they are qualified to proceed as poor persons; they are represented by the Farmworker Project of Mid-Hudson Legal Services, Inc., without charge, under a program funded by the federal Legal Services Corporation.

In 1976, plaintiffs instituted a civil action in this District against a subsidiary of Gurda Farms, Inc. and Stanley Gurda under the Farm Labor Contractor Registration Act of 1963 ("FLCRA"), as amended, 7 U.S.C. § 2041 et seq., DeLeon, et al. v. Ramirez, et al., 76 Civ. 3770 (the "DeLeon action"). In their complaint, plaintiffs charged that defendants had employed an unregistered farm labor contractor to recruit migrant workers, including plaintiffs, to work on defendants' farm in violation of the provisions of the FLCRA. Plaintiffs were granted leave to prosecute the DeLeon action in forma pauperis.

In 1977, Gurda Farms, Inc. and Stanley Gurda filed voluntary petitions in bankruptcy scheduling plaintiffs as creditors; the filing of the voluntary petitions had the effect of automatically staying the DeLeon action pursuant to 11 U.S.C. § 29(a). In order to continue pursuing their rights against defendants in the DeLeon action, plaintiffs initiated two adversary proceedings under Part VII of the Bankruptcy Rules: in the first proceeding, plaintiffs sought, and were granted, leave to continue prosecuting the DeLeon action to final judgment; in the second proceeding, plaintiffs sought a determination that their

FLCRA claims against defendants in the DeLeon action were not provable or dischargeable in bankruptcy. Each such filing required payment of a $15.00 filing fee in each of the two bankruptcy proceedings pursuant to 28 U.S.C. § 1914(a). Plaintiffs sought leave to proceed in the bankruptcy proceedings without payment of costs and fees but the Bankruptcy Court denied their request on June 6, 1978 on the authority of United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Plaintiffs' appeal from that order was not timely filed, and plaintiffs' request for an extension of time to file the notice of appeal on grounds of excusable neglect was denied by the Bankruptcy Judge and his order was affirmed, on appeal, by the District Court.

Thereafter, plaintiffs moved for partial summary judgment in the DeLeon action, then pending before Judge Robert W. Sweet. Judge Sweet ruled that plaintiffs had established that defendants violated the provisions of the FLCRA; he granted plaintiffs' motion and awarded them damages in the sum of $6,500. DeLeon v. Ramirez, 465 F.Supp. 698 (S.D.N.Y.1979).

Plaintiffs then returned to the Bankruptcy Court and sought partial summary judgment in their second adversary proceeding against defendants-bankrupts on the ground that the judgment awarded in DeLeon v. Ramirez, supra, was not provable and not dischargeable in bankruptcy. On August 1, 1979, Bankruptcy Judge R. Lewis Townsend issued a twelve-page decision on plaintiffs' motion. Judge Townsend ruled that the DeLeon judgment was provable in bankruptcy and that issues of fact existed with respect to whether the judgment was a debt for willful and malicious injuries to persons and thus not dischargeable in bankruptcy; accordingly, he denied plaintiffs' motion for summary judgment.

Thereafter, plaintiffs sought permission to proceed to appeal from the Bankruptcy Judge's decision of August 1, 1979 in forma pauperis pursuant to 28 U.S.C. § 1915(a), without payment of filing fees and other charges; plaintiffs' request was denied on August 14, 1979. Judge Townsend held

that Section 40(c)(3) of the Bankruptcy Act, 11 U.S.C. § 68(c)(3),[2] which requires payment of a $10 fee for the filing of a notice of appeal, takes precedence over 28 U.S.C. § 1914(a) and 1915(a), and that Section 40(c)(3) "makes no exception which would allow the granting of this application." Plaintiffs then paid the $40.00 joint filing fee in order to preserve their right to appeal Judge Townsend's orders of August 1 and 14 and Judge Townsend directed that plaintiffs' check be held by the Clerk pending the outcome of their appeal so that the issue whether they were improperly denied *in forma pauperis* status would not be mooted.

In their Notice of Appeal, plaintiffs state that the issue before this Court is "[w]hether the Bankruptcy Judge erred as a matter of law or abused his discretion in holding that plaintiff migrant farmworkers are not entitled to file notice of appeal *in forma pauperis* and without payment of fees in these actions."

The Parties' Contentions

Plaintiffs make two arguments in support of their position: First, they contend that the $10 filing fee requirement under Section 40(c)(3) is subject to Section 1915(a), authorizing, under certain conditions, the commencement, prosecution, or defense of any suit without payment of fees; that the Supreme Court's statement in *Kras, supra,* 409 U.S. at 440, 93 S.Ct. at 635, that "1915(a) is not now available in bankruptcy," is not dispositive because *Kras* relied upon lower court rulings that a *petitioner* seeking discharge of his debts in bankruptcy could not proceed *in forma pauperis* under Section 1915(a) since the later-enacted Referees' Salary Act of 1946 abolished the so-called pauper petition whereas, here, plaintiffs had been proceeding *in forma pauperis* before being forced to participate in a bankruptcy proceeding; and that Section 1915(a) should be read broadly so as to

avoid potential constitutional deficiencies in Section 40(c)(3), see *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

Plaintiffs' second contention is that Section 40(c)(3)'s appellate fee requirement is unconstitutional as applied to them under *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); that, just as in *Boddie,* in which the Supreme Court ruled that a state cannot permit filing fees to bar indigents from securing divorce through its courts, here the Government cannot bar plaintiffs from defending their fundamental interest in the *DeLeon* judgment; that, as in *Boddie,* in which the state had a monopoly of the techniques for dissolution of marriages, here a similar Government-created monopoly exists because, under the bankruptcy laws, once a bankrupt files his petition, a creditor's only remedy is to pursue his rights in the bankruptcy proceeding; and thus, as in *Boddie,* unless a countervailing state interest of overriding significance is shown, plaintiffs must be given a meaningful opportunity to be heard, especially where, as here, plaintiffs are persons whom Congress is seeking to encourage to vindicate their rights through the courts, see Legal Services Corporation Act of 1974, 42 U.S.C. § 2996, *et seq.*

The Government argues that *Kras* is dispositive of both of the issues raised by plaintiffs. First, the Government states, *Kras* explicitly ruled that Section 1915(a) is not applicable in bankruptcy proceedings, and that ruling applies to creditors in bankruptcy proceedings as well as to bankrupts in light of Congress' goal of creating a self-supporting bankruptcy court. Second, the Government urges, plaintiffs' constitutional claim is governed by *Kras* rather

---

**2.** Section 40(c)(3) authorizes the Judicial Conference of the United States to issue a schedule of fees to be charged for the expense of special services relating to or in connection with proceedings before referees. On September 23, 1965 the Judicial Conference amended the

Schedule of Special Charges pursuant to 11 U.S.C. § 68(c)(3), to require payment of the $10.00 filing fee at the time of the filing of a petition for review. *O'Brien v. Trevethan,* 336 F.Supp. 1029, 1030 (D.Conn.1972).

than *Boddie* because plaintiffs' interest in the *DeLeon* judgment is more analogous to the right to a discharge in bankruptcy which the plaintiff in *Kras* sought to protect than to the right to secure a divorce at issue in *Boddie*. Thus, the filing fee requirement is constitutional since it is rationally related to the goal of making the bankruptcy court self-supporting, see *Kras, supra*. Moreover, the Government argues, the constitutionality of the modest $10 fee is controlled by the Supreme Court's decision in *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), where the Court upheld the constitutionality of a $25 appellate filing fee which was a condition precedent to state appellate review of an agency determination resulting in the reduction of plaintiffs' welfare benefits. In *Ortwein*, the Court, relying on *Kras*, held that plaintiffs' due process and equal protection rights were not violated since the increase in welfare payments sought by them had less constitutional significance than the interests the *Boddie* plaintiffs sought to protect, and since the administrative evidentiary hearing provided a procedure, not conditioned on payment of any fee, through which appellants were able to seek redress.

Discussion—Interplay between Sections 40(c)(3) and 1915(a)

A. Legislative History

The original *in forma pauperis* statute was enacted on July 20, 1892, c. 209, 27 Stat. 252, formerly codified at 28 U.S.C. §§ 832–36. The language of the statute was broad; it permitted a qualified person to appear *in forma pauperis* in any suit or action. Six years later, the Bankruptcy Act of 1898 was enacted, 30 Stat. 558. Under Section 51 of the 1898 Act, a bankrupt was permitted to file a voluntary petition without payment of the usual filing fees if his petition was accompanied by an affidavit stating that he was without and could not obtain the money to pay such fees; however, if it was later learned that he could pay the fees, he could be ordered to do so.

Under the Act of 1898, in addition to the $10 filing fee required to be paid by those bankrupts not appearing *in forma pauperis*, the trustee received, in lieu of salary, a 1% commission on sums to be paid as dividends and commissions, or one-half of 1% of the amount to be paid to creditors upon the confirmation of a composition. The 1903 amendment to the Bankruptcy Act increased the filing fee to $15 and authorized the referee to collect 1% of all money disbursed by the trustee, including that paid to secured creditors; it also introduced a charge of 25 cents for each proof of claim filed, payable from the estate rather than by the creditor who filed the claim. Further alterations in the system of fees were made in 1938. See 2A Collier *on Bankruptcy* ¶ 40.01 (14th ed. 1978).

This system of compensating referees by the payment of commissions collected based upon the amount of money they distributed to creditors was changed to a system of compensating referees by the payment of a salary with the enactment of the Referees' Salary Act of 1946, 60 Stat. 326. Congress decided to make the bankruptcy system self-supporting and thus, referees' salaries, as well as their other expenses, were to be paid for by the collection of fees under the Act. The filing fees collected pursuant to the 1946 Act were to be channeled into two funds: (1) a salary fund, to be utilized for the payment of referees' salaries, consisting of the proceeds of the fixed fee of $37 for the filing of a petition in bankruptcy, Section 40(c)(1), and fees to be charged in asset, arrangement, and wage-earner cases and (2) an expense fund, to be utilized for the payment of referees' disbursements consisting of the proceeds of fees collected for special services under Section 40(c)(3), including an appellate review filing fee. If there was any deficiency in these revolving funds, the Treasury was to make the payments due out of the general funds of the United States. In 1959, the referees' salary fund and the referees' expense fund were consolidated into a single fund for reasons of administrative convenience.

The 1978 amendments to the Bankruptcy Act, which are not applicable in the instant case, eliminate this self-supporting feature

of the Act and instead fund the bankruptcy courts as other federal courts are funded, through general federal revenues. The 1978 amendments also revise the schedule of fees charged under the Bankruptcy Act so as to bring them into line with the fee schedule in the federal courts. In addition, the new Act expressly states that Section 1915(a) is not applicable to the filing fees required of petitioners filing voluntary petitions in bankruptcy, 28 U.S.C. § 1930(a) (Supp.1979), though the installment payment system is continued. However, in the provisions under the new Act respecting other filing fees, such as a $5 fee for filing notices of appeal, no such express reference is made to Section 1915(a). 28 U.S.C. § 1930(c). See generally 1 Collier *on Bankruptcy* ¶ 3.03[5] at 3–334 to 3–344 (15th ed. 1979).

### B. The *Kras* Decision

In *United States v. Kras, supra,* an indigent petitioner challenged, on Fifth Amendment grounds, those sections of the Bankruptcy Act which impose fees on petitioners who file a voluntary petition in bankruptcy and condition a discharge upon payment of those fees. The Court first reviewed petitioner's statutory argument, that he was entitled to relief from payment of the bankruptcy charges because of the provisions of 28 U.S.C. § 1915(a). Relying on the reasoning of the lower courts in *In re Garland,* 428 F.2d 1185 (1st Cir. 1970), *cert. denied,* 402 U.S. 966, 91 S.Ct. 1624, 29 L.Ed.2d 130 (1971); *In re Smith,* 323

F.Supp. 1082 (D.Colo.1971); and *In re Smith,* 341 F.Supp. 1297 (N.D.Ill.1972), the Court ruled that despite the seeming facial application of that section to a bankruptcy proceeding, the Referees' Salary Bill of 1946 abolished bankruptcy petitions *in forma pauperis* and thus overrode the provisions of Section 1915(a): "[W]e agree, for the reasons stated by the District Court and the courts in *Garland* and in the two *Smith* cases, *supra,* that § 1915(a) is not now available in bankruptcy. See 2 W. Collier, Bankruptcy ¶ 51.10, pp. 1873–1874 (14th ed. 1971)." [3]

On the constitutional question, the Court held that the filing fee statute was constitutional and that, in ruling otherwise, the District Court mistakenly relied on *Boddie v. Connecticut, supra.* The Court distinguished its holding in *Boddie*: there, Connecticut's refusal to admit the divorce plaintiffs to its courts, "the exclusive precondition to the adjustment of a fundamental human relationship," equated with the denial of an opportunity to be heard, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process. A majority of the members of the Court found that the circumstances in *Kras* were distinguishable from those in *Boddie*: first, unlike Connecticut's exclusive control over marriage, the Government's control over the establishment, enforcement, or dissolution of debts was not exclusive, since bankruptcy was not the only method available to a debtor for the adjust-

---

**3.** The Court cites a section in Collier *on Bankruptcy* wherein the author notes that even in the face of the 1946 amendments to the Bankruptcy Act, eliminating pauper petitions and providing for a system of installment payments,

"[a]n argument could be made, nevertheless, that a pauper petition could be filed ... by virtue of 28 U.S.C. § 832 [now, 28 U.S.C. 1915 (1948)] .... This special statute is of general application and is not repealed by implication by other general statutes unless the conflict is plain and irreconcilable. *Middleton v. Hartford Accident & Indemnity Co.* (C.C.A. 5th, 1941) 119 F.2d 721. It could be argued that the Bankruptcy Act, even as amended, does not expressly negate the application of 28 U.S.C. § 832 [now, 28 U.S.C. § 1915 (1948)] and that a provision for installment payments does not

necessarily conflict with the terms of 28 U.S.C. § 832 [now, 28 U.S.C. § 1915 (1948)]. But in view of the specific change in § 51(2) and the expressed Congressional intent, it is likely that the courts will properly regard 28 U.S.C. § 832 [now, 28 U.S.C. § 1915 (1948)] as of no effect in ordinary bankruptcy proceedings. Any difficulty could have been avoided by a precise statement in § 51 that § 832 [now, 28 U.S.C. § 1915 (1948)] was inapplicable." (footnote omitted).

Congress apparently heeded this suggestion. The Bankruptcy Act of 1978 expressly provides that Section 1915(a) is inapplicable to the filing fees to be paid by *petitioners* in bankruptcy. However, no such provision was made with respect to the appellate filing fees to be paid under the Act. See text at page 482, *supra.*

ment of his legal relationship with his creditors. Second, Kras' alleged interest in the elimination of his debt burden did not rise to the same constitutional level as the *Boddie* plaintiffs' interest based on the marital relationship. The Supreme Court also ruled that the filing fee requirement did not deny Kras equal protection of the laws since only a rational justification need be shown and here such a showing was made based upon the Congressional goal of making the bankruptcy system financially self-supporting.

## C. The Lower Court Decisions

At issue in the *Garland* and the two *Smith* cases was the right of a *petitioner* in bankruptcy to proceed *in forma pauperis*. After reviewing the legislative history of the 1946 amendment to the Act, the courts concluded that two significant changes made by the 1946 amendments indicated that Congress intended to render the *in forma pauperis* statute inapplicable to petitions in bankruptcy: (1) the elimination of the pauper petition and the substitution of an installment payment scheme, with compliance with the fee requirement a precondition to discharge; and (2) Congress' intent to make the system self-supporting based on the collection of the fees provided for in the Act. In *Garland, supra,* 428 F.2d at 1186–87, the court stated that:

"The significant matter is the disappearance of the former pauper provision, and the substitution of a requirement that a bankrupt who asserts contemporaneously with the filing of his petition that he cannot pay the fee, may pay in installments, but must pay ultimately as a condition precedent to discharge . . . .

"In this positive framework there is no room to apply a broad interpretation of 28 U.S.C. § 1915(a) . . . . That section provides in general terms for the waiver of prepayment of court fees in case of indigency. Where the Bankruptcy Act already has a special provision for post-

ponement of fees in case of indigency, we cannot read into it a different provision of a general statute not made specifically applicable. . . . Of more basic importance, section 1915(a) provides for waiver of prepayment only, not for forgiveness . . . . It cannot be read to eliminate a requirement of ultimate payment phrased as a condition precedent."

The only decision to address the applicability of Section 1915(a) to the appellate review fee is *O'Brien v. Trevethan,* 336 F.Supp. 1029 (D.Conn.1972). In *O'Brien,* the court granted a bankrupt-petitioner leave to appeal *in forma pauperis* on two grounds: (1) that Section 1915(a) applied to Section 40(c)(3) because when Congress abolished the pauper petition and substituted an installment payment scheme for petitioners in bankruptcy it made no similar provisions for the payment of other filing fees and thus there was no implied repeal of Section 1915(a) as it applied to appellate filing fees; and (2) that Section 40(c)(3) denied petitioners access to appellate review solely on the basis of their indigency and was unconstitutional under *Boddie, supra.* The Supreme Court's subsequent decision in *Kras, supra,* makes it apparent that the court's holding in *O'Brien,* at least on the second ground, is no longer good law.

No decisions have been brought to the Court's attention in which a creditor sought to appeal from an order of the Bankruptcy Court *in forma pauperis.*[4]

## D. Analysis

After reviewing the legislative history of the 1946 amendments to the Bankruptcy Act, as well as the decisions cited by the parties, the Court is of the view that the 1946 amendments did not impliedly repeal Section 1915(a) insofar as it applies to these particular plaintiffs and that they may prosecute this appeal in forma pauperis. The Court's decision is not based on plain-

---

4. Plaintiffs cite *In re Guilbert,* 154 F. 676 (E.D. Pa.1907) where the court permitted a creditor to file a notice of appeal *in forma pauperis* from an order of the bankruptcy court granting the debtor a discharge in bankruptcy. The court stated that the appeal was the beginning

of a new suit or action to which the *in forma pauperis* statute applied. However, *In re Guilbert* was decided prior to the enactment of the 1946 amendments, which, it is argued, impliedly repealed the applicability of Section 1915(a) to bankruptcy proceedings.

tiffs' status as creditors alone, but on their particular factual situation, that is, as plaintiffs who were appearing in forma pauperis in a pending civil action against the defendants-bankrupts prior to the time that defendants filed their voluntary petitions in bankruptcy. Thus, because their civil suit against defendants was automatically stayed by the filing of the voluntary petitions, plaintiffs were forced to proceed against defendants outside the pending civil action, where plaintiffs were proceeding as poor persons, or give up their claims against the defendants-bankrupts. Neither the express wording nor the legislative history of the 1946 amendments precludes the application of Section 1915(a) to the facts of this case.

First, although the Court made a broad statement in *Kras* to the effect that Section 1915(a) is inapplicable in bankruptcy, the legislative history of the Referees' Salary Act of 1946 and the lower court decisions on which *Kras* relied speak only to the elimination of pauper petitions and the substitution of an installment payment plan for petitioners in bankruptcy.

Second, no similar changes were made respecting the other filing fees required under the Act. Thus, the argument that the 1946 amendments impliedly repealed Section 1915(a) insofar as it applies to appeal fees in bankruptcy is particularly weak. The Government argues, however, that those other fees, including appellate filing fees, were to be utilized to pay the referees' expenses and salaries and thus, Congress' intent to make the system self-supporting would be defeated, in part, should Section 1915(a) be read to apply to fees paid by creditors under the Act. However, the Court is not aware of any case in which plaintiffs who were proceeding *in forma pauperis* in a civil suit were scheduled as creditors in a bankruptcy proceeding instituted by the defendant and thereafter requested permission to appear as poor persons in the bankruptcy action. Allowing a creditor to proceed *in forma pauperis* under such circumstances will have a *de minimis* effect, if any, on the size of the referees' fund.

Lastly, to decline to grant plaintiffs leave to proceed *in forma pauperis* on this appeal on the facts of this particular case would leave a gap in the coverage of Section 1915(a) when there is no substantial evidence that such a result was intended by Congress. Here, the result would be particularly at odds with the remedial purposes of Section 1915(a) since it would allow defendants to force plaintiffs into a forum in which they could not afford to prosecute their claims against the defendants; again, there is no evidence in either the legislative history of the 1946 amendments or the cases that such a result was intended to be achieved under the Bankruptcy Act or that such a result is consistent with the policies underlying the 1946 amendments to that Act.

The Court's ruling is limited in effect; plaintiffs are granted leave to prosecute this appeal *in forma pauperis*. The monies plaintiffs have expended prosecuting this action in the bankruptcy court are not at issue in this appeal: plaintiffs failed timely to appeal Judge Townsend's order denying them leave to appeal *in forma pauperis* below and that order thus became final. Finally, since the Court's decision is based on statutory grounds, it need not, and will not, address plaintiffs' constitutional arguments.

SO ORDERED.